UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 20-06024-LRC |
| | : | |
| BU YONG KIM, | : | CHAPTER 7 |
| | : | |
| Debtor. | : | |
| | : | |
| WILLIAM J. LAYNG, JR. | : | |
| Chapter 7 Trustee for the Estate of | : | |
| Bu Yong Kim, | : | ADV. PRO. NO. |
| | : | |
| Plaintiff, | : | _____ |
| | : | |
| vs. | : | |
| | : | |
| UNITED WHOLESALE MORTGAGE | : | |
| and NATIONSTAR MORTGAGE, LLC | : | |
| d/b/a MR. COOPER, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## **DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS**

COMES NOW United Wholesale Mortgage ("United") and Nationstar

Mortgage, LLC d/b/a Mr. Cooper ("Nationstar"), collectively referred to herein as

the "Defendants" and do hereby file this their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

## SUMMARY OF ARGUMENT

The Plaintiff brings this adversary action against the Defendants to avoid a transfer pursuant to 11 U.S.C. § 544(a)(3) and to recover Defendants' interest in the property pursuant to 11 U.S.C. § 550(a).

The Plaintiff's claim is based exclusively on the contention that the security deed at issue was not recorded in "recordable form" and thus failed to provide the Trustee with constructive knowledge of the lien.

The Plaintiff's claim fails as a matter of law for two reasons:

1. The face of the Security Deed demonstrates that the signature of the Borrowers was attested to in accordance with O.C.G.A. 44-14-33, thus providing constructive notice to all, including the Plaintiff thus precluding any claim that the Plaintiff is a "bona fide purchaser without notice: and

2. Even if we ignore the admitted fact that the Security Deed was executed in full conformity with O.C.G.A. 44-14-33, both the waiver of Borrower's rights and the closing attorney's affidavit, attached to the Complaint as

2

Exhibit A, are also executed in recordable form and properly attested to thus precluding any relief sought in the Complaint.

Therefore, based upon the admissions contained in the Complaint, and specifically the facts recited in Exhibit A to the Complaint, the Plaintiff's claim fails as a matter of law.

## STATEMENT OF FACTS

This adversary action arises from a Security Deed dated December 29, 2017 (the "Security Deed") executed by Bu Yong Kim (the "Debtor") and his wife Hannah S. Kim. A true and correct copy of the Security Deed is attached to the Complaint as Exhibit A, and for convenience is attached hereto as Exhibit A.

The Security Deed was recorded in the real property records of Gwinnett County Georgia at Deed Book 55638, Page 40. The Security Deed is signed by the Borrower and by Hannah Kim. The Security Deed further demonstrates on its face that an unofficial witness attests to the Borrowers' signatures. Additionally, the execution of the Security Deed was witnessed in person before an official witness, that being apparent on the face of the instrument and reflected in the image below.

There is no contest by the Plaintiff as to the authenticity nor veracity of these attesting signatures.

BK55638 PG0054

STATE OF _Georgia_
COUNTY OF GWINNETT

This record was attested before me on __12/27/2012__ by BU YONG KIM HANNAH S KIM, who proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

___ Personally Known

or ✓ Produced Identification
Type and # of ID (last 4 digits) _Bu Yong Kim # 5100 / Hannah S. Kim # 9891_
ID Expiration Date _Bu Yong Kim 12/23/14 / Hannah S. Kim 1/24/17_

Notary Public, as Official Witness

GWINNETT COUNTY
STATE OF GEORGIA
My Commission Expires: _06/22/2013_

MORTGAGE LOAN ORIGINATOR HOJOON CHUNG
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER
NMLS # 60078
MORTGAGE LOAN ORIGINATION COMPANY BCE FINANCIAL CORPORATION
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER
NMLS # 60025

MORTGAGE LOAN ORIGINATION COMPANY (CREDITOR) UNITED WHOLESALE MORTGAGE
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER
NMLS # 3038

GEORGIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 15 of 15
Form 3011  1/01

The unofficial witness recites that the witness was attested to by the official witness who appeared before him on the date of the closing.

Exhibit A also includes a document entitled "Waiver of Borrower's Rights"). The Waiver of Borrower's Rights is fully executed by the Debtor and his spouse, and duly witnessed by an unofficial and official witness. Similarly the Security Deed

incorporates the closing attorney's affidavit which is similarly fully executed in front of both official and unofficial witness.

## ARGUMENT AND CITATION OF AUTHORITY

I.    Standard for Dismissal Under Federal Rule of Civil Procedure 12(b)6.

In ruling on a Fed. R. Civ. P. 12(b)(6) motion "off actual allegations in the complaint must be accepted as true, with all reasonable inferences construed in the light most favorable to the Plaintiff (Ferguson v. Burnside, 2009 WL 2485840. However, "conclusory allegations and unwarranted deductions of fact, however are not admitted as true". (See Cotton v. Massachusetts Mutual Life Insurance Company, 402 F3d 1267 (2005). Likewise, it quotes a formulaic resuscitation of the elements of a cause of action will not due". (See Watts v. Florida International University, 495 F3d 1289 (11th Cir. 2007). On motions to dismiss under Fed. R. Civ. P. 12(b)(6), the Court is permitted to consider documents attached to a Complaint or incorporated by reference into the pleadings. (See Day v. Taylor, 400 F3d 1272 (11th Cir. 2005). Based upon the Plaintiff's admission of the facts recited on the fact of the Security Deed, both as to the requisite attestations required by O.C.G.A. 44-14-33 and the contemporaneous recording of both the Attorney's Affidavit and the

Waiver of Borrower's Rights, the Plaintiff's claim for relief fails to state a claim recognizable under the law.

II.    <u>The Deed to Secure Debt is Patently Executed in Recordable Form</u>.

The Security Deed attached as Exhibit A to the Complaint patently demonstrates that the document was executed in recordable form as governed by O.C.G.A. 44-14-33, which provides:  In order to admit a mortgage to record, it shall be signed by the maker, attested by an officer as provided in Code Section 44-2-15, and attested by one other witness. In the absence of fraud, if a mortgage is duly signed, witnessed, filed, recorded, and indexed on the appropriate county land records, such recordation shall be deemed constructive notice to subsequent bona fide purchasers. A notary is one of the listed offers provided for at O.C.G.A. 44-2-15.  The Security Deed was also witnessed by an unofficial witness, and duly recorded.  Under the recording statute, the Plaintiff was subject to constructive notice of the Security Deed at the time of the filing of the Complaint in Bankruptcy and therefore cannot claim bona fide purchaser status.

III.    The Recorded Waiver of Borrowers' Rights and Closing Attorney's
Affidavit Further Imports Constructive Notice to the Trustee.

Even if the Court is to ignore the obvious fact that the Security Deed was "duly executed" and "duly recorded", the Complaint fails as a consequence of the contemporaneously recorded Waiver of Borrowers' Rights ("Waiver") and the Closing Attorney's Affidavit ("Affidavit")

The Waiver of Borrowers' Rights is a Rider incorporated in to the Security Deed and as such is a part of that instrument.  A review of the Waiver demonstrates that it, like the Security Deed itself, was executed in "recordable form", having been signed by the grantors before an attesting notary and unofficial witness.  The Security Deed as attached to the Complaint reflects that it was contemporaneously recorded as part of the Security Deed.   The law recognizes that where a security instrument on its face lacks compliance with the recording statute, as alleged in the Complaint, but there exists a waiver of borrowers' rights which is both executed in recordable form and is in fact duly recorded, that this recorded instrument constitutes constructive notice to the world; including bankruptcy trustees such as the Plaintiff. (See In Re Jones, 580 BR 916, U.S.B.C. M.D. Georgia, Macon).

In addition, the duly executed and recorded Closing Attorney's Affidavit defeats Plaintiff's claim as a bona fide purchaser. The Security Deed attached to the Complaint includes a Closing Attorney's Affidavit, which specifically attests to the execution of the Security Deed by the borrowers in compliance with O.C.G.A. 44-14-33. The Affidavit was recorded contemporaneous with the Security Deed and neither the veracity nor the authenticity of the Affidavit are contested in the Complaint. The legal effect of the recording of the Affidavit instrument prior to the filing of Complaint in Bankruptcy is to deprive the trustee of bona fide purchaser status. (See Gordon v. Terrace Garden, 571 F 3d. 1342 (11th Cir. 2009) subsequently followed in In Re: Perry, 565 B.R. 442 (2017).

## CONCLUSION

The Plaintiff's Complaint is tethered to the Security Deed, which plainly demonstrates it was fully executed in recordable form before an unofficial and official witness. Thus there is no legal basis on which the Trustee is entitled to any relief. Alternatively, the duly executed and recorded Waiver of Borrowers' Rights and Closing Attorney's Affidavit similarly bar the Trustee's claim.

Respectfully submitted this 26th day of February, 2020.

WEISSMAN PC

*JEFFREY H. SCHNEIDER*
Jeffrey H. Schneider
Georgia Bar No. 629545

3500 Lenox Road, 4th Floor
One Alliance Center
Atlanta, Georgia 30326
404-926-4500
jeffs@weissman.law

*Counsel for Defendants*

5453.997

# EXHIBIT A

RETURN TO:
**KIM & IM, LLC**
**3700 CRESTWOOD PARKWAY**
**SUITE 350**
**DULUTH, GEORGIA 30096**

BK55638 PG0040

FILED & RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA

18 JAN -8  PM 2:00

RICHARD ALEXANDER, CLERK

After Recording Return To:
UNITED SHORE FINANCIAL
SERVICES, LLC
1414 EAST MAPLE RD
TROY, MI 48083
RS1708|
ATTN: POST CLOSING MANAGER

Prepared By:
PORCHSE WEITHERSPOON
UNITED WHOLESALE MORTGAGE
1414 EAST MAPLE RD
TROY, MI 48083
(800) 981-8898

GEORGIA INTANGIBLE TAX PAID
$    495.00
RICHARD T. ALEXANDER, JR.
SUPERIOR COURT GWINNETT
COUNTY, GEORGIA

[Space Above This Line For Recording Data]

## SECURITY DEED

KIM
Loan #: 1217166049
PIN: R5171-301
Serv. #: 0104926464
MIN: 100032412171668491
MERS Phone: 1-888-679-6377

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated DECEMBER 29, 2017, together with all Riders to this document.

(B) "Borrower" is BU YONG KIM AND HANNAH S KIM , HUSBAND AND WIFE. Borrower is the grantor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is UNITED WHOLESALE MORTGAGE. Lender is a LLC organized and existing under the laws of MI. Lender's address is 1414 EAST MAPLE RD, TROY, MI 48083.

(E) "Note" means the promissory note signed by Borrower and dated DECEMBER 29, 2017. The Note states that Borrower owes Lender ONE HUNDRED SIXTY-FOUR THOUSAND FIVE HUNDRED AND 00/100 Dollars (U.S. $164,500.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JANUARY 1, 2048.

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

GEORGIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
© 318.47
Page 1 of 15

Form 3011    1/01

12.  H.K

0002310

48

BK55638 PG0041

0104926464                                                                    1217166849

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider          ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider                  ☐ Planned Unit Development Rider ☐ Biweekly Payment Rider
☐ 1-4 Family Rider               ☒ Other(s) [specify] WAIVER OF BORROWER'S RIGHTS

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non
-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property;
(iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the
Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its
implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time,
or any additional or successor legislation or regulation that governs the same subject matter. As used in this
Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a
"federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan"
under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or
not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and
modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely
as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with
power of sale, the following described property located in the COUNTY of GWINNETT:

GEORGIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
⬡ 318.47                                    Page 2 of 15                    Form 3011   1/01

BK55638 PG0042

0104926464                                                              1217166849

SEE ATTACHED

which currently has the address of 51 LUDWICK LN, LAWRENCEVILLE, GA 30046 ("Property Address"):

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
318.47                                    Page 3 of 15                              Form 3011    1/01

$\mathcal{U}$. H.K

BK55638 PG0043

0104926464                                                                    1217166849

balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
⊕ 318.47                                    Page 4 of 15                              Form 3011   1/01

IL· H·K

BK55638 PG0044

0104926464    1217166849

Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
⑤ 318.47    Page 5 of 15    Form 3011    1/01

12. H.K

BK55638 PG0045

0104926464                                                                    1217166049

and tracking services; or (b) a one-time charge for flood zone determination and certification services and
subsequent charges each time remappings or similar changes occur which reasonably might affect such
determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the
Federal Emergency Management Agency in connection with the review of any flood zone determination
resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance
coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any
particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not
protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard
or liability and might provide greater or lesser coverage than was previously in effect. Borrower
acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of
insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall
become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at
the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender
to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's
right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as
mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal
certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and
renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for
damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall
name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender
may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in
writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be
applied to restoration or repair of the Property, if the restoration or repair is economically feasible and
Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to
hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work
has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.
Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress
payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires
interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or
earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be
paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is
not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to
the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to
Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance
claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the
insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day
period will begin when the notice is given. In either event, or if Lender acquires the Property under Section
22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an
amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of
Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all
insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property.

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
 ⊕ 318.47                                    Page 6 of 15                        Form 3011   1/01

_U.  H.K_

BK55638 PG0046

0104926464                                                                      1217166849

Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of

GEORGIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
☜ 318.47                          Page 7 of 15                          Form 3011   1/01

U, H.K

GSCCCA org 60 Image Index 1    Filed 02/03/20    Entered 02/03/20 10:40:23    Page 3 of 5
Document      Page 14 of 26

BK55638 PG0047

0104926464                                                                      1217166849

disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting
payment.

    If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the
lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel
the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the
ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge
unless Lender agrees to the merger in writing.

    **10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the
Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any
reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage
insurer that previously provided such insurance and Borrower was required to make separately designated
payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain
coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially
equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage
insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available,
Borrower shall continue to pay to Lender the amount of the separately designated payments that were due
when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a
non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable,
notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay
Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if
Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer
selected by Lender again becomes available, is obtained, and Lender requires separately designated payments
toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of
making the Loan and Borrower was required to make separately designated payments toward the premiums
for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect,
or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in
accordance with any written agreement between Borrower and Lender providing for such termination or until
termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay
interest at the rate provided in the Note.

    Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it
may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

    Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may
enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements
are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to
these agreements. These agreements may require the mortgage insurer to make payments using any source of
funds that the mortgage insurer may have available (which may include funds obtained from Mortgage
Insurance premiums).

    As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer,
any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that
derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in
exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides
that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to
the insurer, the arrangement is often termed "captive reinsurance." Further:

    (a) Any such agreements will not affect the amounts that Borrower has agreed to pay for
Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount

GEORGIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
  318.47                                   Page 8 of 15                              Form 3011   1/01

K. H.K

BK55638 PG0048

0104926464                                                                                    1217166849

Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in

GEORGIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
⬤ 318.47                            Page 9 of 15                            Form 3011    1/01

12. H.K

BK55638 PG0049

0104926464                                                                                    1217166849

Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
318.47                                    Page 10 of 15                                    Form 3011   1/01

*V- H.K*

BK55638 PG0050

0104926464                                                                                      1217166849

be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
⬧ 318.47                                          Page 11 of 15                                  Form 3011    1/01

$l\ell\cap$ H.K

BK55638 PG0051

0104926464                                                                              1217166849

Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b)

GEORGIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
⟨⟩ 318.47                              Page 12 of 15                              Form 3011    1/01

H.K

BK55638 PG0052

0104926454                                                          1217166849

"Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that
relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response
action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental
Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous
Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do,
nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental
Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a
Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two
sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous
Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of
the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit
or other action by any governmental or regulatory agency or private party involving the Property and any
Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any
Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of
release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a
Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by
any governmental or regulatory authority, or any private party, that any removal or other remediation of any
Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary
remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on
Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration
following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior
to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify:
(a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the
date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure
the default on or before the date specified in the notice may result in acceleration of the sums secured
by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the
right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a
default or any other defense of Borrower to acceleration and sale. If the default is not cured on or
before the date specified in the notice, Lender at its option may require immediate payment in full of
all sums secured by this Security Instrument without further demand and may invoke the power of
sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints
Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be
entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including,
but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public
advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further
demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and
place and under the terms designated in the notice of sale in one or more parcels and in any order
Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby

GEORGIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
⊕ 318.47                                Page 13 of 15                        Form 3011   1/01

H.K

BK55638 PG0053

0104926464                                                                    1217166849

appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the
Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower
covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all
expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by
this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power
and agency granted are coupled with an interest, are irrevocable by death or otherwise and are
cumulative to the remedies for collection of debt as provided in Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession
of the Property through Borrower, shall immediately surrender possession of the Property to the
purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant
holding over and may be dispossessed in accordance with Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this
Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for
releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the
charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. Borrower waives all rights of homestead exemption in the Property.

25. Assumption Not a Novation. Lender's acceptance of an assumption of the obligations of this
Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a
novation.

26. Security Deed. This conveyance is to be construed under the existing laws of the State of
Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums
secured hereby.

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security
Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____  12-29-2017
- BORROWER - BU YONG KIM - DATE -

_____  12-29-17
- BORROWER - HANNAH S KIM - DATE -

Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

GEORGIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
➐ 318.47                     Page 14 of 15                          Form 3011    1/01

BK55638 PG0054

0104926464                                                                          1217166849

<u>[Space Below This Line For Acknowledgment]</u>

STATE OF _Georgia_

COUNTY OF GWINNETT

This record was attested before me on ___12/29/2012___ by BU YONG KIM HANNAH S
KIM, who proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_____ Personally Known

or

___✓___ Produced Identification
Type and # of ID (last 4 digits) _Bu Yong Kim # 6104 / Hannah S. Kim # 4947_
ID Expiration Date _Bu Yong Kim 11/21/14 / Hannah S. Kim 1/21/14_

Notary Public, as Official Witness

GWINNETT COUNTY
STATE OF _Georgia_
My Commission Expires ___12/23/2013___

MORTGAGE LOAN ORIGINATOR HOJOON CHUNG
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER
NMLS # 60078
MORTGAGE LOAN ORIGINATION COMPANY BCE FINANCIAL CORPORATION
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER
NMLS # 60025

MORTGAGE LOAN ORIGINATION COMPANY (CREDITOR) UNITED WHOLESALE MORTGAGE
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER
NMLS # 3038

GEORGIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
© 318.47                    Page 15 of 15                    Form 3011    1/01

BK55638 PG0055

After Recording Return To:
UNITED SHORE FINANCIAL
SERVICES, LLC
1414 EAST MAPLE RD
TROY, MI 48083
ATTENTION: POST CLOSING MANAGER

Prepared By:
PORCHSE WEITHERSPOON
UNITED WHOLESALE MORTGAGE
1414 EAST MAPLE RD
TROY, MI 48083
(800) 981-8898

## WAIVER OF BORROWER'S RIGHTS

KIM
Loan #: 1217166849
Serv. #: 0104926464
MIN: 100032412171668491

GRANTOR: BU YONG KIM AND HANNAH S KIM , HUSBAND AND WIFE

LENDER: UNITED WHOLESALE MORTGAGE

DATE OF SECURITY DEED: DECEMBER 29, 2017

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO
ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL
THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY
JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO
BE GIVEN UNDER THE PROVISIONS HEREOF: (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR
MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE
UNITED STATES. THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES,
OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR
TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER,
EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3)
ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH
AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS
PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED
AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING
THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR
HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A
BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE
INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

1009.36

Page 1 of 3



BK55638 PG0056

0104826464                                                                           1217166849

READ AND AGREED BY GRANTOR:

_Buford_    12-29-2017

- BORROWER - BU YONG KIM - DATE -

_Hanh co. Ki_    12-29-17

- BORROWER - HANNAH S KIM - DATE -

Signed, sealed and delivered in the presence of:

_____

Unofficial Witness

_____

Notary Public

My Commission Expires: _____



1009.36                     Page 2 of 3

BK55638 PG0057

0104926464                                                                    1217166849

### CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

_____
Closing Attorney

Sworn to and subscribed before me on ___Dec 29, 2017___

_____
Notary Public

My Commission Expires:



1009.36

Page 3 of 3

BK55638 PG0058

## GEORGIA FORECLOSURE DISCLOSURE

### Made Pursuant to Ga. Comp. R. & Regs. r. 80-11-1-.01(9)

KIM
Loan #: 1217166849
Serv. #: 0104926464
MIN: 100032412171668491

Date: DECEMBER 29, 2017

Lender: UNITED WHOLESALE MORTGAGE

Borrower(s): BU YONG KIM
HANNAH S KIM

Property Address: 51 LUDWICK LN
LAWRENCEVILLE, GA 30046

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

By signing below, you acknowledge receipt of this Disclosure.

_Bu Yong Kim_   12-29-17
- BORROWER - BU YONG KIM - DATE -

_Hanh W. Kim_   12-29-17
- BORROWER - HANNAH S KIM - DATE -

1011.28

Page 1 of 1



BK 55638 PG 0059

**EXHIBIT "A"**
**LEGAL DESCRIPTION**

51 LUDWICK LANE, LAWRENCEVILLE, GEORGIA 30046

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 171 OF THE 5TH DISTRICT, GWINNETT COUNTY, GEORGIA, BEING LOT 4, BLCOK C, RAFINGTON PLACE SUBDIVISION, UNIT ONE, AS PER PLAT RECORDED IN PLAT BOOK 71, PAGE 123, GWINNETT COUNTY RECORDS, WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART HEREOF BY REFERENCE.

TAX ID # R5171 301