UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 19-62423-LRC |
| | : | |
| BU YONG KIM, | : | CHAPTER 7 |
| | : | |
|     Debtor. | : | |
| | : | |
| WILLIAM J. LAYNG, JR., | : | |
| Chapter 7 Trustee for the Estate of | : | |
| Bu Yong Kim, | : | |
| | : | |
|     Plaintiff, | : | |
| | : | |
| vs. | : | ADV. PRO. NO. 20-06024-LRC |
| | : | |
| UNITED WHOLESALE MORTGAGE and | : | |
| NATIONSTAR MORTGAGE, LLC d/b/a | : | |
| MR. COOPER, | : | |
| | : | |
|     Defendants. | : | |

**TRUSTEE'S RESPONSE IN OPPOSITION TO THE MOTION TO DISMISS**

COMES NOW William J. Layng, Jr. ("**Trustee**" or "**Plaintiff**"), as Chapter 7 Trustee for

the bankruptcy estate (the "**Bankruptcy Estate**") of Bu Yong Kim ("**Debtor**") and plaintiff herein,

and files this *Response* (the "**Response**") in opposition to the motion to dismiss [Doc. No. 4] and

related papers (collectively, the "**Motion to Dismiss**") of United Wholesale Mortgage ("**United**")

and Nationstar Mortgage, LLC d/b/a Mr. Cooper ("**Nationstar**" and with United, the

"**Defendant**s").

**I.     INTRODUCTION**

For a recorded security deed to provide constructive notice in Georgia, *words matter*.

Simply making an effort to comply with Georgia's recording statutes is not enough.  As the two

seminal Georgia Supreme Court opinions on the subject make absolutely clear, Georgia's recording statutes require strict compliance, noting that "*it costs nothing* for lenders or their agents to review their paperwork to make sure the proper signatures are in place before submitting documents to the superior court for recording." *Wells Fargo Bank, N.A. v. Gordon (In re Codrington)*, 292 Ga. 474, 477 (2013) ("**Gordon II**") (emphasis added); *see also U.S. Bank Nat'l Ass'n v. Gordon*, 289 Ga. 12, 16 (2011) ("**Gordon I**").

And yet, in the Motion to Dismiss, the Defendants request that this Court dismiss Trustee's Complaint [Doc. No. 1] (the "**Complaint**") on the basis that United attempted to comply with Georgia's recording statutes.  More specifically, they argue that the subject Security Deed is "attested" by an official witness. But the purported attestation is a self-described "acknowledgment" indicating that the Kims "attested"[1] some unidentified "record" in front of the notary public.  Moreover, nothing about this purported attestation suggests that the notary witnessed the Kims execute the Security Deed.  The Defendants' attestation clause is an assembly of words that on their own have meaning, but when taken together make no sense.  With an apparent nod to the weakness of their initial argument, the Defendants also argue that, even if the Court concludes that the Security Deed was not attested by a notary public (which the Court should do), the accompanying Waiver of Borrower's Rights provides Trustee inquiry notice of the Security Deed. But a recorded waiver of borrower's rights does not provide constructive notice or a duty to inquire unless it also includes the real property description, or at least the address, of the subject property. The waiver here does not.  Finally, the Defendants argue that the Court should dismiss the Complaint because the Closing Attorney's Affidavit cures the improper attestation.  But the averring closing attorney is not a "subscribing witness" (i.e., he did not witness the

---

[1] Of course, borrowers, like the Kims, execute security deeds. They do not attest them—that's what witnesses do.  As explained in greater detail below, an acknowledgment and attestation are two separate and distinct acts.

execution of the Security Deed and sign his name as evidence of that fact) as required by the

express language of O.C.G.A. § 44-2-18.  Even if the averring closing attorney were a "subscribing

witness," the subject affidavit does not meet the requirements of O.C.G.A. § 44-2-18.  For these

reasons, and as set forth in greater detail below, the Defendants' arguments are without merit and

their Motion to Dismiss should be denied.

## II.    PROCEDURAL HISTORY AND GENERAL FACTUAL BACKGROUND

The following facts and procedural history arise with respect to the Motion to Dismiss.[2]

On the Petition Date, Debtor owned that certain real property commonly known as 51 Ludwick

Lane, Lawrenceville, GA 30046 (the "**Property**") jointly with his wife, Hannah Kim (together

with Debtor, the "**Kims**").  [Complaint at ¶ 10].  On or about December 29, 2017, the Kims

executed a document titled *Security Deed* (the "**Security Deed**") in favor of Mortgage Electronic

Registration Systems, Inc. ("**MERS**") as nominee for United, conveying the Property to secure a

debt (the "**Debt**") in the amount of $164,500.00 ("**Transfer #1**").  *Id.* at ¶ 11 and Exhibit "A."

The Security Deed was recorded on the real property records with the Clerk of the Superior Court

of Gwinnett County, State of Georgia (the "**Real Estate Records**") on January 8, 2018, beginning

at page 40 of Deed Book 55638 ("**Transfer #2**", and together with Transfer #1, the "**Transfers**").

*Id.* at ¶ 12 and Exhibit "A."  A true and correct copy of the Security Deed, along with any riders,

is attached to the Complaint and incorporated therein by reference as Exhibit "A."  *Id.* at ¶ 13 and

Exhibit "A."  Upon information and belief, United is the holder of the Security Deed and any

---

[2]    In deciding a motion to dismiss, a court should consider the allegations in the complaint.  *See* Fed. R. Bankr.
P. 7012; Fed. R. Civ. P. 12(d).  Neither factual allegations made in the motion to dismiss nor papers attached to that
motion are proper for consideration by the Court and should be disregarded. *See id.* Consideration of factual assertions
outside the complaint would be improper and would trigger the notice requirements under Bankruptcy Rule 7012(d).
*See id.*

14744597v3

related interest in the Property arising out of the same, and Nationstar is the servicer of the Debt. *Id.* at ¶¶ 14-15.

The second to last page of the Security Deed is the signature page (the "**Signature Page**") and appears to bear the Kims' signatures. *Id.* at Exhibit "A." The Signature Page also includes an illegible signature just above the line titled "Unofficial Witness" and just below the following phrase: "Signed, sealed and delivered in the presence of." *Id.* The Signature Page does not include the signature of any other person. *Id.*

At the top of the last page of the Security Deed appears the following language: "Space Below this Line for *Acknowledgment*." *Id.* (emphasis added). Then, below that referenced line is what appears to be an acknowledgment by a notary public. *Id.* The language of the acknowledgment provides that "This *record* was *attested* before me on 12/29/2017 *by Bu Yong Kim Hannah S Kim*, who proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me." *Id.* (emphasis added). More specifically, it appears as follows:



*Id.* (emphasis added).

The Security Deed indicates that only one rider is attached. *Id.* That rider is a Waiver of Borrower's Rights rider (the "**Waiver of Borrower's Rights**"). *Id.* It appears just after the last page of the Security Deed and is two pages. *Id.* It is signed by the Kims and their execution is attested by an unofficial and official witness. *Id.* The Waiver of Borrower's Rights does not

include the real property description or the address of the Property. *Id.* And, it makes no reference to any such information. *Id.*

A Closing Attorney's Affidavit (the "**Affidavit**") appears on the next page after the Waiver of Borrower's Rights, on a single page. *Id.* The Affidavit appears to be signed by two people. *Id.* The first signature appears above a line titled "Closing Attorney," and the second signature appears above a line titled "Notary Public." *Id.* As to the contents of the Affidavit, it states, *inter alia*, that the "Borrower(s) executed [a certain] *Deed to Secure Debt* and 'Waiver of Borrower's Rights.'" *Id.* (emphasis added) (capitalization in original). *Id.* The term "Deed to Secure Debt" is not defined in the Security Deed or any of its riders, and that term does not appear anywhere else in the Security Deed or its riders. *Id.* The Affidavit does not say that the Security Deed was executed, that anyone witnessed its execution, or that it was attested in accordance with the law. *Id.*

Comparing the signature of the unofficial witness on the Security Deed and the parties who signed the Affidavit, neither the person who signed above the line titled "Closing Attorney" nor the person who signed above the line titled "Notary Public" on the Affidavit, acted as the unofficial witness to the Security Deed. *Id.* Moreover, the person who signed the Affidavit above the line titled "Closing Attorney" (the "**Closing Attorney**") did not sign the Security Deed attesting to the fact that he or she witnessed the Kims' execution of the Security Deed. *Id.* Indeed, there is nothing in the Security Deed or its riders that proves that the person who signed the Affidavit as the Closing Attorney witnessed the Kims' execution of the Security Deed. *Id.*

On February 3, 2020, Trustee filed the Complaint against the Defendants seeking, among other things, to avoid, recover, and preserve the interest of United in the Property for the benefit of the Bankruptcy Estate. On February 26, 2020, the Defendants filed their Motion to Dismiss, arguing that the Complaint fails to state a claim upon which relief can be granted.

## III.     ARGUMENT AND CITATION OF AUTHORITY

Contrary to the Defendants' assertions, Trustee pled facts in the Complaint that state claims upon which relief can be granted under 11 U.S.C. §§ 544, 550, and 551.  For the following four separate and dispositive reasons, the Motion to Dismiss should be denied.  First, the Security Deed is not attested by an official witness as required by O.C.G.A. § 44-14-61.[3]  Second, the Borrower's Waiver of Rights does not provide Trustee inquiry notice because it is not properly of record, and, alternatively, even if it is, it does not include the Property's real property description or even its address and thus does not provide inquiry notice.  Third, the Affidavit is not an affidavit of a "subscribing witness" as required by O.C.G.A. § 44-2-18.  And, fourth, the Affidavit does not satisfy both prongs of, or substantially comply with, O.C.G.A. § 44-2-18.

### A.     Standard of Review for a 12(b)(6) Motion to Dismiss

As a preliminary matter, prior to addressing the reasons that the Court should deny the Motion to Dismiss, it is important to note the standard for reviewing a motion under Rule 12(b)(6). Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding under Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, permits a defendant in an adversary proceeding to move for dismissal when a plaintiff fails to state a claim upon which relief can be granted.   Upon a Rule 12(b)(6) motion to dismiss, a court must accept as true the complaint's factual allegations in the light most favorable to the plaintiff.  *M.T.V. v. DeKalb County School Dist.*, 446 F.3d 1153, 1156 (11th Cir. 2006).  Dismissal under Rule 12(b)(6) is proper only if it appears that the complaint fails to allege facts that state a "plausible claim for relief."  *Scarver v. Patel (In re Haven Trust Bancorp, Inc.)*, 461 B.R. 910, 911 (Bankr. N.D. Ga. 2011) (Diehl, J.).

---

[3]      Inexplicably, the Defendants do not cite to O.C.G.A. § 44-14-61 in the Motion to Dismiss.

14744597v3

B.    The Role of Georgia Law

Georgia law controls the outcome of this matter.  The statutory predicates for the relief

requested in the Complaint are 11 U.S.C. §§ 544, 550, and 551.[4]  Section 544(a)(3) provides, in

relevant part, that a bankruptcy trustee is in the same position of a hypothetical bona fide purchaser

who bought real property from the debtor on the petition date and simultaneously perfected the

transfer and may avoid a transfer of real property that is avoidable by that hypothetical bona fide

purchaser.  11 U.S.C. § 544(a)(3) (2019).  Specifically, that code section provides, in relevant part:

> (a)  The trustee shall have, as of the commencement of the case, and without regard
> to any knowledge of the trustee or of any creditor, the rights and powers of, or may
> avoid any transfer of property of the debtor or any obligation incurred by the debtor
> that is voidable by—
>
> . . .
>
> (3)  a bona fide purchaser of real property, other than fixtures, from
> the debtor, against whom applicable law permits such transfer to be
> perfected, that obtains the status of a bona fide purchaser and has
> perfected such transfer at the time of the commencement of the case,
> whether or not such a purchaser exists.

*Id.*

In turn, 11 U.S.C. § 550 provides that, after the avoidance of a transfer under 11 U.S.C. § 544

(or other code sections), a trustee may recover the transferred property from the initial transferee or

the immediate or mediate transferee of the initial transferee.  11 U.S.C. § 550(a) (2019).  Specifically,

that code section provides:

> (a)      Except as otherwise provided in this section, to the extent that a transfer is
> avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, Trustee
> may recover, for the benefit of the estate, the property transferred, or, if the court so
> orders, the value of such property, from--

---

[4]      The Motion to Dismiss did not address Trustee's claims under 11 U.S.C. §§ 550 and 551.  As a result, other
than addressing the express language of these Code Sections, Trustee will not make argument regarding them, but
Trustee does note that if the Complaint states a claim under 11 U.S.C. § 544(a)(3), it also states claims under these
two Code Sections.  Trustee reserves the right to address any future arguments by the Defendants that Trustee did not
state a claim under them.

14744597v3

Case 20-06024-lrc    Doc 8    Filed 03/17/20    Entered 03/17/20 20:46:44    Desc Main
Document    Page 8 of 26


> (1)  the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2)  any immediate or mediate transferee of such initial transferee.

*Id.*  The good faith, value, and without knowledge provisions of 11 U.S.C. § 550(b) are defenses that are unavailable to an initial transferee.  11 U.S.C. § 550(b) (2019).  In other words, an initial transferee is strictly liable, if the transfer through which it received the property interest has been avoided.  11 U.S.C. § 550(a)-(b) (2019); *see also In re Red Dot Schenic, Inc.*, 351 F.3d 57 (2d Cir. 2003); *In re Cohen*, 300 F.3d 1097 (9th Cir. 2002); *In re Ogden*, 314 F.3d 1190 (10th Cir. 2002). Finally, 11 U.S.C. § 551 provides that "[a]ny transfer avoided under section . . . 544 . . . is preserved for the benefit of the estate but only with respect to property of the estate."  11 U.S.C. § 551 (2019).  The preservation under this section is automatic.  *See id.*; *see also In re Van de Kamp's Dutch Bakeries*, 908 F.2d 517 (9th Cir. 1990).

State law governs a trustee's rights under 11 U.S.C. § 544.  *See In re Michigan Lithographing Co.*, 997 F.2d 1158, 1159 (6th Cir. 1993); *In re Professional Inv. Props. of America*, 955 F.2d 623, 627, 26 C.B.C.2d 528 (9th Cir. 1992), *cert. denied sub nom. Miller v. Briggs*, 506 U.S. 818, 113 S. Ct. 63, 121 L. Ed. 2d 31, *reh'g denied*, 506 U.S 1014, 113 S. Ct. 638, 121 L. Ed. 2d 569 (1992); *In re Seaway Exp. Corp.*, 912 F.2d 1125, 1128 (9th Cir. 1990); *In re Mosello*, 193 B.R. 147, 151 (S.D.N.Y. 1996).  Thus, because the Property is located in Georgia, this Court should look to Georgia law in evaluating the rights and powers of Trustee standing in the shoes of a bona fide purchaser of real property.

As a clear matter of Georgia law, a patently defective security deed is not entitled to be recorded and, even if it is recorded, does not provide constructive notice of its contents to a bona fide purchaser.  *Gordon I*, 289 Ga. 12 (2011); *Gordon II*, 292 Ga. 474 (2013); *Detention Mgmt.,*

14744597v3

*LLC v. UMB Bank, NA (In re Mun. Corr., LLC)*, 501 B.R. 119, 133 (Bankr. N.D. Ga. 2013)
(Bonapfel, J.) (stating "[a] document that is not entitled to be recorded must be disregarded in its
entirety.  It cannot provide constructive notice or a duty of inquiry."). A patent defect is one that
is "obvious and easily detectable," as opposed to a latent defect, which "is not apparent on the face
of the deed." *Gordon v. Wells Fargo Bank, N.A. (In re Codrington)*, 430 B.R. 287, 292 (Bankr.
N.D. Ga. 2009), *aff'd*, 716 F.3d 1344 (11th Cir. 2013).  Accordingly, a security deed that lacks an
attestation by either an official witness or an unofficial witness does not provide constructive
notice to a subsequent bona fide purchaser, even if the deed is filed and admitted to record.  *See,
e.g., Gordon I*, 289 Ga. 12 (2011); *Gordon II*, 292 Ga. 474 (2013).

Based on the above principles of law, a trustee, standing in the shoes of a hypothetical bona
fide purchaser under 11 U.S.C. § 544(a)(3), can avoid a filed and recorded security deed that has
not been attested by an official or unofficial witness, even if the security deed was filed and
recorded with other documents that include additional signatures and notary seals.  *See, e.g.,
Gordon II*, 292 Ga. 474 (2013).  In the case at bar, the Security Deed does not contain an attestation
by an official witness.  As a consequence, the Security Deed does not provide constructive notice
to the Trustee as a bona fide purchaser and may be avoided by Trustee.

The Defendants erroneously contend that a notary public did attest to the execution of the
Security Deed, or, alternatively, that the Borrower's Wavier of Rights or the Affidavit cure the
improper attestation. As explained below, the Defendants are wrong.

C.     The Security Deed is Not Attested by an Official Witness in Accordance with
       O.C.G.A. § 44-14-61.

The first dispositive reason that the Court should deny the Motion to Dismiss is that the
Kims' execution of the Security Deed is not attested by an official witness as required by O.C.G.A.

§ 44-14-61.  Under Georgia law, as amended on July 1, 2015,[5] for a deed to secure debt[6] to be properly recorded and thereby provide constructive notice, it must be attested by two witnesses, one of which must be an official witness. Ga. Code Ann. § 44-14-61 (2015) (requiring two *attesting* witnesses, one of which *must* be an official witness); *see also Gordon II*, 292 Ga. 474 (2013); *Gordon I*, 289 Ga. 12 (2011); *Stone v. Decatur Federal Savings and Loan Ass'n (In re Fleeman)*, 81 B.R. 160 (Bankr. M.D. Ga. 1987); *Detention Mgmt., LLC v. UMB Bank, NA (In re Mun. Corr., LLC)*, 501 B.R. 119, 133 (Bankr. N.D. Ga. 2013) (Bonapfel, J.).  Attestation and acknowledgment are two separate and "distinct acts" under Georgia law.  *Trauner v. First Tennessee Bank, N.A. (In re Simpson)*, 544 B.R. 913, 918 (Bankr. N.D. Ga. 2018) (Hagenau, J.).  An acknowledgement, as opposed to an attestation, by an official set forth in O.C.G.A. § 44-2-15, including a notary public, is insufficient to provide constructive notice.  Ga. Code Ann. § 44-14-61 (2015); *In re Lindstrom*, 608 at 289 n. 5 (Sigler, J.).

In this regard, acknowledgment is defined as "the act of the grantor going before some competent officer and declaring the paper to be his deed, and it must be accompanied by the certificate of the officer stating that it was made."  *Pindar's Georgia Real Estate Law and*

---

[5]      The Georgia legislature amended Georgia's recording statutes on July 1, 2015. Prior to these amendments, O.C.G.A. § 44-14-61 provided that, to be admitted to record, security deeds had to be attested or proven in accordance with the laws for mortgages.  Ga. Code Ann. § 44-14-61 (2009).  In turn, the recording statute for mortgages allowed a mortgage for realty (and thus a security deed) to be recorded if it was attested by two unofficial witnesses and acknowledged by an official as defined by O.C.G.A. § 44-2-15, even if it was not attested by one of those officials. O.C.G.A. §§ 44-2-15, 44-2-21(b), 44-5-30, and 44-14-33 (2009).  The July 1, 2015 amendments to O.C.G.A. §§ 44-14-33 and 61 "removed the acknowledgement language and, effective July 1, 2015, the [s]tatute[s] expressly require[] two attestations for proper recordation," one of which must be an attesting official witness.  *Scarver v. Pingora Loan Servicing, LLC (In re Lindstrom)*, 608 B.R. 283, 289 n. 5 (Bankr. N.D. Ga. 2019) (Sigler, J.); *see also* Ga. Code Ann. §§ 44-14-33 and 61 (2009); Ga. Code Ann. §§ 44-13-33 and 61 (2015).  Indeed, as this Court has recently noted, "[l]egislative history indicates that the 2015 removal of the acknowledgement language from the [r]ecording [s]tatute was to 'clarify that only attestation will suffice in recording and executing [security deeds].'" *In re Lindstrom*, 608 at 290 (citing Ga. H.R. Daily Rep., 2015 Reg. Sess. No. 40 (April 7, 2015)).

[6]      For some inexplicable reason, the Defendants cite O.C.G.A. § 44-14-33 (and do not even mention O.C.G.A. § 44-14-61) for the proposition that the Security Deed provides Trustee constructive notice.  As explained in the prior footnote, on July 1, 2015, the Georgia legislature amended Georgia's recording statutes such that O.C.G.A. § 44-14-33 has nothing to do with whether a security deed is properly of record and provides constructive notice. *See* O.C.G.A. §§ 44-14-33 and 44-14-61 (2015).

14744597v3

*Procedure* § 19:59 (Daniel F. Hinkel, ed., 7th Edition) (*citing* to *White v. Magarahan*, 87 Ga. 217, 13 S.E. 509 (1891)). In turn, attestation means the "act of witnessing the actual execution of a paper and subscribing one's name as a witness to that fact." *Gordon v. Wells Fargo Bank, N.A. (In re Knight)*, 504 B.R. 668, 672 (Bankr. N.D. Ga. 2014) (Hagenau, J.) (*quoting Gilliam v. Burgess*, 151 S.E. 652, 653 (Ga. 1930)). The most common form of an attestation "recites that the witnesses saw the maker sign, or that he signed in their presence." *Pindar's Georgia Real Estate Law and Procedure* § 19:63 (Daniel F. Hinkel, ed., 7th Edition). Although no precise language is required for a clause to be deemed an attestation clause, "signed, sealed, and delivered in the presence of" and "in the presence of" have been deemed to be an attestation by the Georgia Supreme Court. *See, e.g., Hansen v. Owens, et al.*, 132 Ga. 648, 64 S.E. 800, 805 and 806 (1909) (finding that both of these phrases are attestations in Georgia). A statement that does not indicate that the signing party actually saw the actual execution of a security deed does not constitute an attestation that satisfies Georgia's recording statutes. *In re Knight*, 504 B.R. at 672 (Hagenau, J.).

In applying these rules of law to that language in the Security Deed just before the signature of the notary public, the one thing that is clear is that the notary public does not attest to the execution of the Security Deed, as required by O.C.G.A. § 44-14-61. The Security Deed expressly defines the act of the notary as an acknowledgment, by saying that the "Space Below this Line for Acknowledgment." [Complaint at Exhibit "A"]. Ordinarily, an acknowledgement would say something to the effect of, "the grantors appeared before me and acknowledged that they executed the Security Deed." But the language here does not say that. It says that the Kims "attested" a "record." What record? Whose signature were they attesting? Though it is unclear what the

11

notary public was attempting to certify, ultimately, it is irrelevant, because this phrasing does not supply the Security Deed with the missing official witness.[7]

Defendants want the Court to decide that a clause that says that the Kims "attested" a "record' (i.e., witnessed the execution of some unknown "record" and signed their names as evidence of that fact) means that the notary witnessed the Kims "execute" (a word that means something entirely different than "attest") the Security Deed. Taking the Defendants' argument to its logical conclusion, any fancy-sounding word that does not mean "executed" could be substituted for "attested" and that would satisfy Georgia's recording statutes. "This *record* was [*amputated/exculpated/excoriated, etc.*] before me on 12/29/2017 by Bu Yon Kim and Hannah S Kim . . ." would be satisfactory to provide constructive notice, at least according to the Defendants.[8] But, none of these make sense, and they do not comply with Georgia law. None of them prove that the Kims executed the Security Deed before the notary, and that the notary subscribed his name to that fact. *See, e.g., In re Knight*, 504 B.R. at 672 (Hagenau, J.). The same is true of the phrase that actually appears before the notary's signature. It does not prove that the notary witnessed the Kims execute the Security Deed. It makes no sense. It has no meaning, and no amount of pretzel logic by the Defendants is going to cure this patent defect. The Georgia Supreme Court has made very clear that simply trying is not good enough when it comes to Georgia's recording statutes. *See Gordon I*, 289 Ga. 12, 16 (2011) (emphasis added); *Gordon II*, 292 Ga. 474, 477 (2013). In sum, the Security Deed does not comply with the strict requirements

---

[7]    Even if it were a proper acknowledgment, it still would not satisfy the requirements of O.C.G.A. § 44-14-61, as amended, because an acknowledgement by a notary public is no longer sufficient to admit a document to record. *See, e.g., In re Lindstrom*, 608 at 289 n. 5 (Sigler, J.).

[8]    Although this phraseology may seem absurd, it is no more absurd than the Defendants' argument that the language at issue, which literally says that the Kims "attested" a certain "record," proves that the notary actually saw the Kims *execute* the Security Deed.

12

of O.C.G.A. § 44-14-61 because the Kims' execution of the Security Deed is not attested by an official witness. The Court should deny the Motion to Dismiss.

      D.     <u>The Borrower's Waiver of Rights Does not Provide Inquiry Notice to Trustee because it is not Properly of Record, or, Alternatively, because it Does not Include the Property's Real Property Description.</u>

The next dispositive reasons that the Court should deny the Motion to Dismiss are that the Borrower's Waiver of Rights is not properly of record and thus provides no notice, whether constructive or inquiry; and, alternatively, even if it is properly of record, it does not include the real property description of the Property and as a result provides no notice.

      1.     <u>The Borrower's Waiver of Rights does not provide inquiry notice because it is not properly of record.</u>

A borrower's waiver of rights, standing alone on the real estate records, "provides no constructive notice so as to create a duty of inquiry . . . ." *Gordon v. Wells Fargo Bank, N.A. (In re Codrington)*, 430 B.R. 287, 299 (Bankr. N.D. Ga. 2009) (Massey, J.).[9]  In response to a bank arguing that a borrower's waiver of rights provided a trustee notice of an improperly attested security deed in *In re Codrington*, Judge Massey first noted that "[the bank] has not cited, and [this] Court has not found, any Georgia statute providing for the recording of a waiver of borrower's rights or providing that the mere recording of a waiver of borrower's rights provides constructive notice of its existence." *Id.* at 298-299.  Judge Massey then went on to hold that the borrower's waiver of rights, which was almost identical to the Borrower's Waiver of Rights at issue here, provided no notice of the subject security deed.  *Id.*

The same reasoning applies in the instant matter.  Like Georgia's recording statutes in effect at the time of this Court's holding in *In re Codrington*, the current version of those statutes, which have not been changed by the Georgia legislature in any material way, do not allow for the

---

[9]     This is the bankruptcy court opinion that ultimately led to *Gordon II*.

recording of a waiver.  *See id.* at 298 (citing to O.C.G.A. §§ 44-2-2(a)(1), 44-2-6, 44-2-8, 44-2-9,

44-2-10, 44-2-18, 44-2-19, 44-2-20, 44-2-25, and 44-2-30 and finding that none of them authorize

the recording of a waiver).  As a result, like this Court's holding in *In re Codrington*, in the instant

matter, it should hold that the Waiver of Borrower's Rights is not properly of record, does not

provide constructive notice, and does not give rise to a "duty of inquiry"[10] and deny the Motion to

Dismiss.

> 2.  <u>The Waiver of Borrower's Rights does not provide inquiry notice because
> it does not include the real property description of the Property.</u>

Even assuming, for the sake of argument, that the Waiver of Borrower's Rights was entitled

to be recorded (it was not), it does not provide Trustee notice of the Security Deed because it does

not contain the Property's real property description or its address.  A property description that is

"manifestly too meager, imperfect, or uncertain to serve as adequate means of identification" is

"insufficient as a matter of law" to put a purchaser on inquiry notice.  *Gordon II*, 292 Ga. at 477-

478 (citing *Deljoo v. SunTrust Mortgage*, 284 Ga. 438, 440 (2008)).  For example, in *Gordon II*,

a bank argued that a waiver of borrower's rights that was properly executed, attested, and recorded

provided the trustee inquiry notice of an improperly attested security deed.  *Gordon II*, 292 Ga. at

477-478.   The court in *Gordon II*, observed that "while the waiver identifies the lender and

grantors . . ., it only generically references a security deed and fails to identify or describe the

property purportedly to be conveyed or encumbered by the referenced security deed."  *Id.*   It then

held, "in the total absence of identification or description of the property subject to the security

---

[10]      Also like the waiver in *In re Codrington*, the Borrower's Waiver of Rights does not qualify as an affidavit
affecting title to land because it does not comply with the strict recording requirements of O.C.G.A. § 44-2-18(c).  *See
In re Codrington*, 430 B.R. at 299; *see also Dollar, et al. v. Thompson*, 96 S.E.2d 493, 212 Ga. 831 (Ga. 1957);
*Hopkins v. Virginia Highland Assoc.*, 541 S.E.2d 386, 247 Ga.App. 243 (Ga. App. 2000); *Bowman, et al. v. Century
Funding, LTD., et al.*, 627 S.E.2d 73, 277 Ga.App. 540 (Ga. App. 2006).

14

deed, the waiver itself would not place a bona fide purchaser on notice that he should make further inquiry." *Id.* at 478.

Here, the Waiver of Borrower's Rights is almost identical to the waiver of borrower's rights at issue in *Gordon II*. Like the waiver in *Gordon II*, the Waiver of Borrower's Rights generically references a security deed and the Kims as the grantors. [Complaint at Exhibit "A"]. Also like the waiver in *Gordon II*, the Waiver of Borrower's Rights here fails to identify or describe the property purportedly conveyed or encumbered by the referenced security deed.[11]  *See id.*  Thus, like the waiver in *Gordon II*, the Waiver of Borrower's Rights does not put Trustee on inquiry notice of the Security Deed. As a result, even if the Waiver of Borrower's Rights were entitled to be recorded, which it was not, the Court should still deny the Motion to Dismiss.

The above arguments are, again, dispositive. The Waiver of Borrower's Rights provides no notice to Trustee, whatsoever, and even if it does, it does not provide Trustee inquiry notice of the Security Deed.

     E.     <u>The Affidavit does not Cure the Improper Attestation because it is not an Affidavit of a Subscribing Witness</u>.

The next dispositive reason that the Court should deny the Motion to Dismiss is that the Affidavit is not an affidavit of a subscribing witness to the Security Deed. Under O.C.G.A. § 44-2-18, a deed that is not attested or acknowledged by an official witness may still be admitted to record upon an affidavit of a "*subscribing witness*" but not by an affidavit from someone who is

---

[11]     In support of their argument that the Borrower's Wavier of Rights puts Trustee on notice of the Security Deed, the Defendants cite to *In re Jones*, 580 B.R. 916 (Bankr. M.D. Ga. 2017), without providing any argument about its applicability. However, unlike the waiver at issue in that matter, the waiver here does not include the Property's address. Also, unlike the court in that matter, Trustee asserts that this Court should not be so quick to discount Judge Massey's holding that a waiver is not entitled to be recorded and thus provides no duty of inquiry. In fact, on the initial appeal from *In re Codrington*, the United States District Court agreed with Judge Massey in this regard, and because of the specific questions certified by the Eleventh Circuit to the Georgia Supreme Court, that issue was not ultimately confronted in *Gordon II*. Judge Massey's holding that a borrower's waiver of rights is not entitled to be recorded and thus provides no constrictive notice and no duty of inquiry was certainly not overruled.

Case 20-06024-lrc    Doc 8    Filed 03/17/20    Entered 03/17/20 20:46:44    Desc Main
Document        Page 16 of 26

not a "*subscribing witness*."  Ga. Code Ann. § 44-2-18 (2005) (emphasis added); *Willie v. Hines-Yelton Lumber Co., et al.*, 146 S.E. 901 (Ga. 1929); *Gordon v. Terrace Mortgage Co. (In re Hong Ju Kim)*, 571 F.3d 1342 (11th Cir. 2009); *Dodge v. American Freehold Land Mortgage Co.*, 34 S.E. 672, 673-674 (Ga. 1899) (holding that an affidavit by a non-subscribing witness does not allow the subject document to be probated or admitted to the record).  More specifically, that code section provides:

> If a deed is neither attested by nor acknowledged before one of the officers named in Code Section 44-2-15, it may be recorded upon the *affidavit of a subscribing witness*, which affidavit shall be made before any *one of the officers* named in Code Section 44-2-15 and shall testify to *the execution of the deed <u>and</u> its attestation according to law*. A substantial compliance with the requirements of this Code section shall be held sufficient in the absence of all suspicion of fraud.

Ga. Code Ann. § 44-2-18 (2005) (emphasis added).   The term "subscribing witness" means "one *who witnesses the signatures* on an instrument and signs at the end of the instrument to that effect." *Black's Law Dictionary*, 1634 (8th ed. 2004); *see also Hines-Yelton Lumber Co.*, 146 S.E. 901 (Ga. 1929); *In re Kim*, 571 F.3d 1342 (11th Cir. 2009); *Dodge*, 34 S.E. 672, 673-674 (Ga. 1899). It is incontrovertible that the Closing Attorney was not a subscribing witness; that is, he did not sign his name as a witness to the execution of the Security Deed. Consequently, the Defendants cannot validly invoke O.C.G.A. § 44-2-18 to bail them out from the legal consequences that flow in this priority contest between Trustee, as a bona fide purchaser, and United, as holder of the defective Security Deed.[12]

---

[12]        In addition to citing to *In re Kim* for the proposition that the Affidavit cures the improper attestation of the Security Deed, the Defendants also cite to *In re Perry*, 565 B.R. 442 (Bankr. M.D. Ga. 2017).  However, whether the closing attorney was a "subscribing witness" was not raised and not addressed by the court in that matter.  In addition, the form of the security deed at issue in that matter is entirely different from the form of the Security Deed at issue here.  As a result, its holding is not only not binding on this Court, but it is also inapposite to the outcome of this matter.

16

Georgia law is settled and long standing that only a subscribing witness can be the affiant in an affidavit given to comply with O.C.G.A. § 44-2-18. Consider *Hines-Yelton Lumber Co.* In that case, a dispute arose between two competing claimants to certain real property, and the issue before the court was whether a lease was properly admitted to record, which would have the effect of establishing the defendant's priority over that of the plaintiff's. *Hines-Yelton Lumber Co., 146 S.E. at 903.*[13] The lease upon which the defendant based its claim was signed by both a grantor and grantee. *Id.* Two unofficial witnesses (respectively, "**Witness A**" and "**Witness B**")[14] attested to the execution by the grantor, and two other unofficial witnesses (respectively, "**Witness C**" and "**Witness D**") attested to the execution by the grantee. *Id.* However, no *official witness* attested to or acknowledged the execution by either the grantor or the grantee. *Id.* Below the signatures of the grantor and the grantee, there were two affidavits from Witness A. *Id.* In the first affidavit (the "**First Affidavit**"), Witness A averred that he saw the grantor "sign, seal, and, as his act and deed, deliver the within written agreement, and that he with [Witness B] witnessed the execution thereof." *Id.* In the second affidavit (the "**Second Affidavit**"), Witness A averred that he saw the grantee "sign, seal, and, as his act and deed, deliver the within written agreement, and that he with [Witness B] witnessed the execution thereof." *Id.* After the court concluded that the Second Affidavit did not cure the defective attestation, or acknowledgment, because Witness A was not a "subscribing witness" to the signature of the grantee, the court held that the First Affidavit was

---

[13]    Importantly, the previous version of O.C.G.A. § 44-2-18, effective at the time of the decision in *Hines-Yelton Lumber, Co.*, was almost identical to its successor, allowing a deed that was not properly attested by or acknowledged before an official witness to be admitted to record upon the affidavit of a subscribing witness, taken before an official witness, testifying to the execution of the deed and its attestation according to law. *Id.* at 904. In addition, it also had a substantial compliance provision that provided "A substantial compliance with this requisition shall be held sufficient, in the absence of fraud." *Id.* This is almost identical to the substantial compliance provision in the effective version of O.C.G.A. § 44-2-18.

[14]    To simplify the explanation of the facts of this case, Trustee is using letters to represent the names of the witnesses. However, the actual names of these attesting witnesses are set forth in the opinion at page 903. *Id.* at 903.

sufficient to cure the defective attestation and to allow the lease to be recorded because Witness A was a "subscribing witness" to the signature of the grantor.  *Id.*  In summary, under well settled Georgia law, only an affidavit from a "subscribing witness" cures a defective attestation or acknowledgment by an official witness under O.C.G.A. § 44-2-18.

In the instant matter, one witness subscribed to the execution of the Security Deed on the Signature Page.  [Complaint at Exhibit "A"].  As a matter of fact, a scrawl of a signature appears above the line titled "Unofficial Witness."  *Id.*  In comparing the signature of the subscribing unofficial witness on the Signature Page to that of the Closing Attorney on the Affidavit, it is clear that the unofficial witness, who by definition is a subscribing witness, is not the averring Closing Attorney.  Really, it is apparent that the Closing Attorney on the Affidavit is the notary public who signed on the last page of the Security Deed below the language "Space Below this Line for *Acknowledgment*."  And when taking into the account the earlier arguments showing beyond peradventure that the notary who signed on that last page of the Security Deed did not attest to the execution of the Security Deed by the Kims, it is clear that the Closing Attorney did not sign the Security Deed as a subscribing witness.  *Id.*  And, reasoning by analogy, like the Second Affidavit in *Hines-Yelton Lumber Co.*, the Affidavit does not cure the Security Deed's defective attestation because it is not an affidavit of a "subscribing witness."  As a result, the Security Deed should not have been admitted to record and does not give Trustee notice in his role as a bona fide purchaser.

The above argument, that the Closing Attorney was not a subscribing witness, is supported when one considers this Court's recent ruling in *Scarver v. Pingora Loan Servicing, LLC (In re Lindstrom)*, 608 B.R. 283 (Bankr. N.D. Ga. 2019) (Sigler, J.).  In that matter, a security deed was missing an attestation by an official witness, but did include an acknowledgment by a notary public.  *In re Lindstrom*, 608 B.R. at 287.  The bank argued, among other things, that the closing

attorney's affidavit cured the missing official witness's attestation. *Id.* at 291. This Court rejected

that argument, reasoning that an acknowledging notary public is not a subscribing witness. *Id.* at

293. The same reasoning applies here. Whatever the notary did on the last page of the Security

Deed, he did not subscribe his name to the fact that he witnessed the Kims' execute the Security

Deed. As a result, like the holding in *In re Lindstrom*, the Court should hold that the Affidavit

does not cure the improper attestation of the Security Deed.

The above arguments are dispositive. Because the Affidavit is not the affidavit of a

subscribing witness, it cannot possibly cure the defects of the Security Deed. The Motion to

Dismiss should be denied.

To the extent that the Court disagrees with this dispositive ground, the Trustee will next

set forth two additional, separate, and dispositive reasons that the Motion to Dismiss should be

denied.

      F.    <u>Even if the Closing Attorney were a Subscribing Witness, the Affidavit does not
Testify to both the Security Deed's Execution and its Attestation.</u>

Even if the Closing Attorney were a "subscribing witness," which he was not, the next

dispositive reason that the Motion to Dismiss should be denied is that the Affidavit does not satisfy

O.C.G.A. § 44-2-18—that is, it does not testify to (1) the execution of the Security Deed and (2)

its attestation according to law, or substantially comply with these requirements. In their Motion

to Dismiss, the Defendants rely almost exclusively on the holding from *In re Kim* for the

proposition that the Affidavit satisfies the two prongs of O.C.G.A. § 44-2-18. First and foremost,

the closing attorney in *Kim* actually did sign the security deed in question (his signature was visibly

present on the deed as a "witness"). So even if *In re Kim* is good law, the facts are crucially distinct

from this case. However, based on the two landmark decisions from the Supreme Court of Georgia

in *Gordon I* and *Gordon II*, reached after the decision in *In re Kim*, it is clear that the attestation

rules of Georgia should be construed consistent with the statutory language and not permissively as was done in *In re Kim*. *See Gordon I*, 289 Ga. 12, 16 (2011); *Gordon II*, 292 Ga. 474, 477 (2013).

In *In re Kim*, the Eleventh Circuit Court of Appeals attempted to reach a decision that complied with "Georgia recording law generally." *In re Kim*, 571 F.3d at 1347. However, it made its decision without benefit of the opinions from *Gordon I* or *Gordon II*. As to the prong of O.C.G.A. § 44-2-18 requiring that the subject affidavit testify that the subject security deed was executed, the affidavit in *In re Kim* complied with this requirement because it averred that "the [Debtor] executed the Security Deed and 'Waiver of Borrower's Rights.'" *Id.* at 1344. So the issue turned to whether the subject affidavit complied with the prong of O.C.G.A. § 44-2-18 requiring that the affidavit testify that the security deed was attested according to the law. Despite the fact that the subject attorney's affidavit made no mention that he and the other witness saw the execution of the security deed, the court in *In re Kim* interpreted the subject affidavit to "in effect" testify that the security deed was both executed and witnessed by an unofficial witness and an official witness, the closing attorney—whose signature appeared as the purported notary on the attestation page. *Id.* In so concluding, the court reasoned:

> By testifying to the execution of this particular Security Deed, which is part and parcel of the same Security Instrument recorded in the deed book, the closing attorney was *in effect* testifying that the Security Deed was executed by Hong Ju Kim and witnessed by an unofficial witness and the closing attorney (the closing attorney was the notary public on the attestation page).

*Id.* (emphasis added).

The *In re Kim* ruling reads out of O.C.G.A. § 44-2-18 the statutory language "its attestation according to law." It makes a conjunctive statute disjunctive. It does so because every subscribing witness, by definition, has witnessed the execution of the security deed, and so the decision

effectively rewrites this code section to require only that a subscribing witness aver that the security deed was signed.  What is more, such an interpretation opens the door for potential fraud.  For example, one unofficial witness could properly attest the execution of the deed and the signature of a second unofficial witness could be forged.  Nevertheless, based on the ruling in *In re Kim*, the security deed would still be in recordable form if the properly attesting witness went to a notary public and averred that the security deed was executed.  This could be done without the subscribing witness providing false testimony that the security deed was attested in accordance with the law.  As a result, this interpretation could open the real estate records to fraudulent deeds.

In addition to these issues, the holding in *In re Kim* is based, in part, on that court's misplaced reliance on *Hines-Yelton Lumber Co.* for the proposition that "an affidavit need not be perfect in order to substantially comply with § 44-2-18."  *In re Kim*, 571 F.3d at 1345 (citing only *Hines-Yelton Lumber Co.* for that proposition).  The general facts of *Hines-Yelston Lumber Co.* are set forth in greater detail above, but, as a reminder, the First Affidavit clearly stated that Witness A saw the grantor "sign, seal, and, as his act and deed, deliver the within written agreement, and that he with [Witness B] witnessed the execution thereof."  *Hines-Yelton Lumber Co.,* 146 S.E. at 903.  However, the jurat[15] stated that the First Affidavit was "sworn to before" the notary, but it did not say that Witness A "subscribed" the First Affidavit before the notary.  *Id.*  Thus, in addition to the issue of whether an affidavit from a non-subscribing witness satisfied O.C.G.A. § 44-2-18 (as discussed in detail above), there was another issue: whether Witness A signed the First Affidavit before the notary and, if not, whether that invalidated the First Affidavit.  *Id.*  In other words, the issue dealt with formalities in the jurat and had nothing to do with the testimony in the affidavit.  *Id.*  With an eye toward the substantial compliance provision of

---

[15]      A jurat in "an affidavit is that part of it, or addition to it, where the officer certifies that it was sworn to before him."  *Britt v. Davis*, 60 S.E. 180, 180 (Ga. 1908).

O.C.G.A. § 44-2-18, the Supreme Court of Georgia determined that the First Affidavit substantially complied with O.C.G.A. § 44-2-18 because: (a) the First Affidavit was signed by the notary and Witness A; and (b) the notary's signature line stated that Witness A swore to the First Affidavit before him. *Id.* Thus, the issue in that matter—whether Witness A had subscribed the First Affidavit in front of the notary—was a wholly different issue than the issue in *In re Kim*— that is, whether the language in the affidavit that "[the Debtor] executed the Security Deed" satisfied the two prongs of O.C.G.A. § 44-2-18. And, the court in *In re Kim* took a giant leap from the prior precedent of *Hines-Yelton Lumber Co.* as to what satisfies the substantial compliance provision of O.C.G.A. § 44-2-18,

Subsequent Georgia Supreme Court jurisprudence in *Gordon I* and *Gordon II* place significant doubt as to the validity of *In re Kim.* In *Gordon I,* the Supreme Court of Georgia unanimously held that a security deed that is filed and recorded does not give constructive notice to subsequent bona fide purchasers where the security deed is patently defective (i.e., it lacks attestation by a notary public or unofficial witness). *Gordon I*, 289 Ga. 12. In *Gordon II,* the Supreme Court of Georgia, again unanimously, held that a patently defective security deed (i.e., it lacks attestation by a notary public or unofficial witness) does not provide subsequent bona fide purchasers constructive notice even when it is recorded and filed with other documents that include additional signatures and notary seals. *Gordon II*, 292 Ga. 474. In each, the Supreme Court of Georgia made clear that the general spirit of the Georgia recording law is one of strict compliance with statutory requirements. In each, the Supreme Court of Georgia, quoting from this Court, admonished that "it costs nothing for lenders or their agents to review their paperwork to make sure the proper signatures are in place before submitting documents to the superior court for recording." *Gordon II*, 292 Ga. at 477; *see also Gordon I*, 289 Ga. at 16. And, any permissive

22

construction, like the one that the Defendants are promoting in their Motion to Dismiss, does nothing more than "shift to the subsequent bona fide purchaser and everyone else the burden of determining [possibly decades after the fact] the genuineness of the grantor's signature and therefore the cost of investigating and perhaps litigating whether or not an attested deed was in fact signed by the grantor." *Gordon I*, 289 Ga. at 16.

With these points in mind, the legal conclusion that follows is that the Affidavit does not meet the requirements of O.C.G.A § 44-2-18 because it does not testify that the Security Deed was executed or attested, much less testify that it was attested in accordance with the law.  As previously discussed, the first prong of O.C.G.A. § 44-2-18 requires that a subscribing witness testify that the subject deed was executed.  Ga. Code Ann. § 44-2-18 (2005).  The Affidavit here says nothing about the Security Deed being executed.  [Complaint at Exhibit "A"].  It says that an unidentified "Deed to Secure Debt" was executed and does not even mention the Security Deed. *Id.*  Thus, unlike the First Affidavit in *Hines-Yelton Lumber Co.* and the affidavit in *In re Kim* (which expressly said that the subject security deed was signed, and not some unknown "Deed to Secure Debt"),[16] the Affidavit here does not satisfy the first prong of O.C.G.A. § 44-2-18 because it does not testify that the Security Deed was executed (it says that some unidentified "Deed to Secure Debt" was signed), or for that matter, even mention the Security Deed.

What is more, the Affidavit fails to satisfy the second prong of O.C.G.A. § 44-2-18 because it makes no mention of whether anyone witnessed the execution of the Security Deed or that such a witness signed his or her name to this fact.  The second prong of O.C.G.A. § 44-2-18 requires that a subscribing witness testify that a security deed was attested according to law.  Ga. Code Ann. § 44-2-18 (2005).  As previously stated, attestation means the "act of witnessing the actual

---

[16]    This is an important point.  The language in the Affidavit is starkly different than the language in the affidavit in *In re Kim*.

execution of a paper and subscribing one's name as a witness to that fact." *In re Knight*, 504 B.R. at 672 (*quoting Gilliam*, 151 S.E. at 653). When an affidavit does not state that the averring party, or anyone else, saw the actual execution of a security deed, it does not constitute testimony regarding the attestation of the deed. *Id.* For example, in *In re Knight*, this Court was faced with the issue of whether an affidavit testifying that the "Borrower(s) executed the Security Deed and 'Wavier of Borrower Rights'" constituted an attestation of the security deed. *Id.* Reasoning that such language does not stand for the proposition that the closing attorney "saw the execution" of the deed, this Court concluded that the language did not and could not be an attestation as to the deed. *Id.* In other words, only testimony that a subscribing witness saw the execution of a deed qualifies as language evidencing attestation (actually witnessing the execution of an instrument and subscribing one's name as witness to that fact). *Id.*

Here, the Affidavit does not mention that the Closing Attorney saw the execution of the Security Deed or that anyone witnessed its execution. [Complaint at Exhibit "A"]. It only states that the "Borrower(s) executed [an unidentified] *Deed to Secure Debt*." *Id.* (emphasis added). Akin to the language of the affidavit in *In re Knight*, this language does not come close to being testimony that that the Security Deed was attested, much less that it was attested according to law. And unlike the First Affidavit in *Hines-Yelton Lumber Co.*, the Affidavit does not substantially comply with the requirements of O.C.G.A. § 44-2-18 because it has not satisfied either of the two prongs of that code section. What is more, to the extent that the Court determines that *In re Kim* is still good law, unlike the facts in that matter that clearly placed the closing attorney/notary public in the room at the time that the subject deed was signed, there is no indication here in the Security Deed, any of its riders, or the Affidavit that the Closing Attorney actually witnessed or was even present when the Security Deed was signed. [Complaint at Exhibit "A"]. The Affidavit does not

mention the Security Deed, is not incorporated into the Security Deed (through paragraphs A and H of the Security Deed), and does not contain a description of the land being conveyed under the "Deed to Secure Debt" that it references. *Id.* So, unlike the affidavit in *In re Kim*, the Affidavit cannot be deemed to "in effect" testify that anyone witnessed the execution of the Security Deed.

In summary, the Affidavit fails to cure the improper attestation of the Security Deed because it does not satisfy, or substantially comply with, the requirements of O.C.G.A. § 44-2-18. And, for another dispositive reason, the Court should deny the Motion to Dismiss.

**IV.    CONCLUSION**

The Complaint clearly states a claim upon which relief can be granted. First, the Security Deed is not attested by an official witness, as required by O.C.G.A. § 44-14-61. Second, the Waiver of Borrower's Rights does not provide notice of the Security Deed because it is not entitled to be of record, and, even if it is, it does not include the Property's real property description, as the Georgia Supreme Court held was required in *Gordon II*. Third, the Affidavit is not an affidavit of a "subscribing witness." Fourth, even if the Closing Attorney were a "subscribing witness," based on well settled Georgia law, the Affidavit does not satisfy both prongs of O.C.G.A. § 44-2-18, or substantially comply with the requirements of that code section. As a result, the Court should deny the Motion to Dismiss in its entirety.

Respectfully submitted, this 17th day of March, 2020.

ARNALL GOLDEN GREGORY LLP
*Attorneys for Trustee*

By:*/s/  Michael J. Bargar*
Michael F. Holbein
Georgia Bar No. 360070
Michael J. Bargar
Georgia Bar No. 645709
William D. Matthews
Georgia Bar No. 470865

171 17th Street, NW, Suite 2100
Atlanta, GA 30363
michael.bargar@agg.com
404-873-7030 (telephone)
404-873-7031 (facsimile)

14744597v3

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this date served a true and correct copy of the foregoing TRUSTEE'S RESPONSE IN OPPOSITION TO THE MOTION TO DISMISS by electronic mail on the following entities at the email addresses stated:

Jeffrey H. Schneider
Weissman PC
Email: jeffs@weissman.law

Dated this 17th day of March, 2020.

*/s/ Michael J. Bargar*
Michael J. Bargar
Georgia Bar No. 645709

26

14744597v3